Bye bye. Bye bye. Okay. Next. Our next. You're both there. Great. Ah, 212448 Melcore Incorporated versus West American Company. And whenever you're ready. May it please the court James, but only on behalf of the appellant. This case is different than the Sandy point dental Crescent Plaza and Bradley hotel cases for 2 reasons. 1st, unlike the policy language, the court previously considered. The relevant policy language in this case is ambiguous. 2nd, related closure orders, effectively dispossessed Melcorp of its covered property. Unlike the plaintiffs in the other coven, 19 coverage cases, the court has decided who effectively lost the preferred use of their insured property. Regarding the 1st difference, the relevant policy. Business income coverage under Melcorp's policy cannot be triggered without direct physical loss of or damage to the insurance covered building or business personal property. The phrase direct physical loss of business personal property is ambiguous. Business personal property is a defined term, and the parties must have intended that it have its defined meaning. The policy defines business personal property to include intangible property, like an insurance use interest as tenant and improvement improvements and betterments and labor materials or services furnished or arranged by the insured on personal property of others. It is impossible to see how an insured could lose intangible property, like a use interest or labor or services. It provides on personal property of others in a way that amounts to something other than loss of use. When the closure order was in effect, was Melcorp deprived of all access to the great steak and potato location in the mall or was it just prevented from operating it as a restaurant? In other words, what I'm wondering about is, were you allowed to physically access the space during the shutdown? Melcorp is in the interior of the Fox Valley Mall food court and has no exterior entrance. So it was forced to close when the mall closed. However, the owner was able to access the property once a week to check on refrigeration and freeze the products that he maintains in his freezer. But the closure orders effectively robbed Melcorp of any practical use of its property. It could not conduct carry out operations like other restaurants that have filed lawsuits because customers couldn't access the mall. Really about the only practical use of the property was to use its freezer or refrigeration, which are a 45 minute drive from the owner's freezer and refrigerator in his home and is really serves no use at all. It's a food stall in a closed mall's food court. It's effectively worthless or has been rendered worthless when the mall closes. What do we do with the virus exclusion in this case? Judge Feinerman didn't reach it. But why isn't that under Mashallah a straightforward way to resolve this case? Your Honor, with regards to Melcorp's loss, the virus exclusion is ambiguous. And therefore, West American has failed to satisfy its burden of showing that it applies. Considering the policy as a whole and insured in Melcorp's position could reasonably interpret the virus exclusion to bar coverage for losses caused directly by viruses and to not bar losses that viruses cause indirectly. Other exclusion. What we addressed in Mashallah. Well, Your Honor, this is a little different in Mashallah. The plaintiff had an anti-concurrent causation clause associated with the virus exclusion, which barred coverage for losses caused by viruses indirectly and directly. And regardless of whether there's any other concurrent cause or whether a virus contributes in any sequence. In this case, other exclusions like the earth movement exclusion, water exclusion, and fungus exclusion contain anti-concurrent causation clauses that bar losses resulting directly or indirectly from an excluded clause. But the virus exclusion does not. And exclusions, the test with regards to exclusions is not what the insurer intended them to mean, but what a reasonable person in the insurance position would understand them to me. And so because it's assumed that the direct indirect language in the anti-concurrent causation and other exclusions serves a purpose and insured could reasonably interpret the virus exclusion, which doesn't contain any direct indirect language is only excluding losses caused directly by viruses. Furthermore, interpreting the virus exclusion to include loss or damages that viruses cause indirectly or in combination with other causes of loss would render the anti-concurrent causation clauses and other exclusions superfluous. And the reason this matters is, although COVID-19 may be a direct cause of the government closure orders, it's an indirect cause of the Fox Valley Mall's closure. To illest, for example, you know, based on the number of new diagnoses in Illinois, we arguably have more COVID-19 today than ever before. Yet the Fox Valley Mall is open to the public. You could go to that bread, steak and potato and eat lunch today. Therefore, COVID, which is more present than ever, is not necessarily a direct cause of the Fox Valley Mall's closure. It's an indirect cause brought about by the closure orders. In just returning to what Justice Roedner asked earlier, this situation is more akin to the buildings surrounded by tornado debris that the court referenced in its Sandy Point dental decision than it is the situations of plaintiffs and other cases that the court has ruled on or that are pending before the court. As previously mentioned, as a result of the closure, there's no practical business purpose that the property could be used for. And if there's no further questions, I'd like to reserve the rest of my time for rebuttal. Thank you very much, Mr. Padoli. Is it Mr. Shirley? Mr. Shirley. Mr. Shirley. Spelled a little bit differently. Yeah, you may. Good morning, Your Honor. Good morning, Justices. I represent West American. Much as I wish my colleague, Judge Roedner, were on the Supreme Court, we don't use that title. I'll just say Your Honor. I'm rattling. I'm rattling. Justice is a sign of respect, too. I represent West American Insurance Company. I think this is a simple case. Judge Feinerman did an excellent job granting a motion for judgment on the pleadings. He's granted a number of dismissals. I think it should be affirmed. The Seventh Circuit opinion in Sandy Point and the other opinions controls. Quite frankly, every federal court of appeals that have addressed this exact same issue in this case has affirmed dismissals. So has, I think, every judge sitting over in the Daly Center as well and other judges around the country. There's no direct physical loss of or damage to property here. And even if there is a virus exclusion applies, even though Judge Feinerman didn't have to have to get to that. So a few a few things, as counsel mentioned, this is a restaurant in a food court. As a result of the governor's orders, they claim they suffered direct physical loss of the restaurant. They do not allege that the virus was present. They do not allege that anyone with COVID-19 was present at the property. So that's different from the cases you've heard this morning. Clearly, there's no direct physical loss of or damage to property. This is a temporary loss of use due to governmental orders. That's a purely economic loss, which has not been covered in the first party world for for decades. Once again, the Sandy Point case is controlling. I was looking at the amended complaint in Sandy Point this morning. And one of the things the plaintiffs alleged in Sandy Point. This is document number 23, 7, 17, 20. Therefore, this is an allegation. Therefore, due to the orders of the Illinois governor and the COVID virus crisis, a dental practice that mostly does routine procedures is effectively shut down during the duration of the crisis. The plaintiff has been forced to hold ordinary operations, resulting in substantial loss of revenue. So it's it's exact it's the exact same allegation that's here because of the governmental orders. The mall closed down and we can't get to our business. In my brief. If a restaurant owner was prevented by a shutdown order from even setting foot upon their physical restaurant space during the shutdown. Would that constitute the type of access or use deprivation that we indicated in Sandy Point? Could constitute a direct physical loss? No, not not under a property policy for direct physical loss or damage. There is no civil authority coverage in this policy, by the way. But there are scenarios, I mean, not not in the not in the COVID, not in the COVID-19 world. There are scenarios where you may have access being prevented that might trigger direct physical that might trigger civil authority. For example, if your honors remember, I think it's it was last year out in out in the western part of the state. I don't know if you remember, there was a big explosion and fire, I think, by Belvedere. OK. And remember, there was a plant that was burning and burning and burning. And that that fire extended beyond the plant. So the police and the fire department, I think they shut down the area a mile around that facility. So if I if I have a business that's in that shutdown, let's say I have a business that's a half mile from that plant that burned, that civil authority order may trigger civil authority coverage under that policy. And why is that? Because you first had an explosion and a fire. And then you had the government entities issuing an order saying nobody can come within a mile of that plant. So you have the prior physical damage, then you have an order saying no access. So that might trigger physical civil authority coverage, but there's no civil authority coverage here in this policy. So that that's my answer to that question. And that's accurate. I cited to a number of federal circuit courts of appeals that have ruled the same way as in Sandy Point in my brief. Oral Surgeons is from the 8th Circuit. Gilreath is from the 11th Circuit. Santos Italian Cafe, the 9th Circuit. Mud Pie, the 9th Circuit. And then in the last few weeks or in the last few weeks, Your Honor, there have been several more. I did not file a supplemental brief, I think, or supplemental authority. I think other counsel did on some of the earlier cases. One case is 10012 Holdings. That's the 2nd Circuit. Goodwill Industries. That's the 10th Circuit on December 21. Terry Black's Barbecue that was mentioned earlier this morning. And then just two days ago, Estes versus Cincinnati Insurance. That's the 6th Circuit, January 12. Site 2022 Westlaw 108606. I do want to talk about the argument about intangible property and what this is. Counsel attached to his complaint of the policy. And if you look at document 1-1, page 101 of the complaint, and I also cite to this language in my brief. This is the building and personal property coverage form. And you'll see under B, the issue is what's covered property. And it says your business personal property so Melchor's. Your business personal property consists of the following property located in or on the building. So that's tangible property. And then there's a list of seven. The first list, the first is number one, furniture and fixtures. That's easy. Machinery and equipment is number two. Stock is number three. That's the merchandise. Then it says in four, all other personal property owned by you and used in your business. Then you get to five and six. Labor, materials, or services furnished or arranged by you on personal property of others. And then six, your interest in improvements and betterments, fixtures, alterations, made a part of the building, but you don't own it. So why is this language here? This covers your business personal property that's damaged. So that's Melchor's. What happens, for example, if there's a bar built in a restaurant, okay, and the lessee is the insured, and the lessee says my bar burned down, the actual bar that I used burned down. The insurance company says, well, thank you that your bar burned down, but you don't own the bar.  Then the insurance company can come back under these clauses and say, wait a minute. I know it's not your, I know it's not my personal property that burned down, but I have an interest in that bar because I helped build the bar. I know it might be a fixture. I know it might be owned by my owner. But when the bar burned down, you have to pay me to replace that bar, even though I didn't own it. So that's why these clauses are here. Under 6, I'm sorry, under Subpoint 5, the personal property of others still has to be directly physical damaged. Under 6, the fixtures, alterations, and installations, and additions, those are tangible. They still have to be physically damaged. So council takes that language out of context. A couple more things, and I will close. Even if Judge Feinerman didn't get to it, the virus exclusion does apply. If you look at Mishala, Mishala had, remember Mishala had two policies involved in the case. One was Mishala, and one was Rinaldi's. Rinaldi's was a restaurant in Park Ridge. And the Rinaldi's policy language did not have anti-concurrent cause language. I'm looking at the policy right now. The exclusion for loss due to virus or bacteria in the Rinaldi's policy is exactly the same as the exclusion in my policy. So remember, there are two policies. The court said it didn't matter whether one had anti-concurrent cause or not. It doesn't matter. And finally — Let me interrupt you just a minute because I want to get back to this physical loss or damage. I look at that as it's confined to that, physical loss or damage. And physical loss, when they talk about repair or replacement, that's a result of physical loss or damage. Correct. So I have more of a confining look at this as opposed to all of the expansion that you're talking about. I agree. You disagree with me, but that's where I am. I agree, Your Honor. Judge Feinerman did not even get into the issue of the exclusion. He correctly decided there was no direct physical loss or damage here. And that was the end of his analysis. And I thought his example of the computer about physical loss was very, very good. And I know a number of courts have cited to it. You remember he said if somebody walks in, they want to take a computer, they grab the computer and they run out, well, that computer is physically lost. Physical loss of property. If somebody gets mad and takes a hammer to the computer, that's physical damage. And physical is the key word. And if somebody walks into their building and they just can't get their computer going, that's not covered. That's economic loss. I agree with Your Honor. Feinerman did not need to get past that point. And I don't think this court needs to as well. Thank you. Mr. Oling. Your Honor. Just to address a few of the points made by defense counsel. Regarding Rinaldi's, although Rinaldi's did not have an anti-concurrent causation clause. The crux of our argument, which was not addressed in Rinaldi's, is that other exclusions in this policy bar losses caused by the excluded loss directly or indirectly. And the virus exclusion does not. It's the difference between various exclusions within the policy. If some of them say they exclude losses that are caused directly or indirectly, it's reasonable to interpret the exclusions that lack such language as being limited to situations where they cause the loss directly. In the Rinaldi's decision, it's unclear whether there were other exclusions in the policy that contained the direct, indirect language and or an anti-concurrent causation clause. Regarding the building and personal property or business personal property. When defense counsel was going through, he suggested that the labor materials or services necessarily means that the personal property of others has been lost or damaged. However, if you go to the next page, page 102, personal property of others is actually a separate type of covered property. So, or let me just to clarify, it's personal property to others that's in the insured's care, custody or control and located on the described premises. So, if that's a different type of business or covered property that is outside the realm of business personal property, then the labor materials or services furnished or arranged by the insured must mean something different. And it's the labor and services or the tenants use interest that are the covered property. To say that it's the personal property of others or the improvements and betterments themselves would be to rewrite the plain language in favor of the insurer. And West American was capable of drafting an intelligible policy. And just with regards to the business personal property, if you look at other cases, for example, in the society cases, they don't exclude the labor materials or services language. And instead of use interest is tenant in improvements and betterments, just identify improvements and betterments. So, other insurers did address this or avoid this situation. Did you have a last word or is that it? Just in closing, Your Honor, this is not the exact same issue that has been addressed by other circuits and or this circuit. As I mentioned earlier, this language is unique. And based on a review of cases, including from other circuits, it does not appear that this exact language has been addressed before. And the phrase direct physical loss of business personal property is ambiguous. But even if the court finds that it's not ambiguous for the reasons we already discussed, we feel this satisfies the complete physical dispossession that the court contemplated may be possible in Sandy Point Dental. Would you say complete physical loss? Does that mean the building has to burn down or be destroyed? No, Your Honor. In this case, the actual Apollo defines the building as the food stall that Melcourt leases inside of the food court. So the fact that it's lost all of its practical uses. It's our position that that's a direct physical loss of the building. Because it's closed down by order. Yes. Governor. Yes, Your Honor. But it goes. They experienced a greater detriment or loss than a lot of the other plaintiffs, whereas restaurants located on their own property could operate carry out businesses. Melcourt could not. And again, the orders are akin to the situation where the tornado debris surrounds a building, even though the owner was able to go in once a week to check his freezer. Just be. The only utility from the property after the shutdown orders was utilizing the refrigeration and freezers there. Which serves no beneficial use at all. Back to loss of use. Correct. Your Honor. Your Honor. We are it is a loss of use argument that we're making. But it's so pervasive that it's akin to a direct physical dispossession. All right. Thank you. We want to thank you both very much. And we will take the case under advisement. You take care of yourselves and your families. Thank you. Thank you. Thank you.